**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN**

**R.W. and M.W., on behalf of their minor child, A.W.,**
Plaintiffs,

**Traverse City Area Public Schools,**
Defendant.

Case No. _____
Hon. _____
Magistrate Judge _____

**COMPLAINT FOR REVIEW OF ADMINISTRATIVE DECISION**

**STATEMENT OF FACTS**

1. On January 21, 2025, TCAPS issued an IEP progress report that failed to document measurable progress in language acquisition, executive functioning, or socio-emotional growth. Parents immediately raised concerns.

2. On March 6, 2025, the Michigan Office of Special Education denied parents' request for mediation, forcing them to proceed to due process.

3. On March 10, 2025, TCAPS convened a REED meeting. Parents explicitly requested comprehensive evaluations in speech-language (ASL and English), cognition, executive functioning, and a Functional Behavioral Assessment (FBA) by a BCBA. TCAPS refused, checking "no additional data needed."

4. Parents also described A.W.'s difficulties with attention, behavior, and learning in detail at the REED. Under IDEA, this was sufficient to trigger evaluation obligations. 20 U.S.C. § 1414(b)(3)(B). TCAPS ignored these requests.

5. On April 21, 2025, parents sent an email to TCAPS requesting IEEs in socio-emotional and behavioral domains, specifically by a BCBA.

6. On April 22, 2025, parents emailed requesting IEEs in cognitive and executive functioning domains.

7. On April 22, 2025, TCAPS filed a Response to Petitioners' Emergency Motion, attaching a draft MET report. That report claimed no additional testing was needed, despite listing significant communication barriers and disclaiming validity of results.

8. The MET report stated several times that results should be "interpreted with caution" and were not valid due to lack of ASL interpreter support. Evaluators were not trained in Deaf education and used assessments not normed for Deaf students.

9. On April 28, 2025, parents filed a Motion to Amend their complaint to add interpreter-access claims and insufficiency of evaluations. The ALJ granted the motion.

10. On April 28, 2025, TCAPS filed its Answer, denying liability.

11. On April 28, 2025, parents filed a Reply to TCAPS's opposition to staying the IEP meeting, stressing the prejudice of proceeding without evaluations.

12. On April 29, 2025, the ALJ issued an Order Following Prehearing Conference, acknowledging the amendment but failing to preserve findings on all issues.

13. On April 29, 2025, TCAPS emailed parents (via Tiffany Pommaville) granting limited IEEs in behavioral domains. This was voluntary and narrow.

14. On April 29, 2025, TCAPS finalized the IEP. The plan omitted requested evaluations, failed to include measurable goals, and offered no binding interpreter provision.

15. On May 6, 2025, Pommaville emailed parents approving IEEs in cognitive, executive functioning, and speech-language, but capping reimbursement at $10,000. This limitation unlawfully restricted scope.

16. On May 8, 2025, TCAPS filed a Proposed Consent Order attempting to moot the case without addressing substantive claims. Parents rejected it.

17. On May 9, 2025, parents filed a Position Statement reiterating that claims were live: failure to evaluate, denial of FAPE, denial of effective communication.

18. On May 9, 2025, TCAPS filed a Motion for Summary Judgment, arguing mootness due to voluntary concessions.

19. On May 13, 2025, parents filed a Motion for Order with Findings, explicitly requesting factual findings and legal conclusions. IDEA requires them. 20 U.S.C. § 1415(h)(4).

20. On May 19, 2025, parents filed Motions to Quash subpoenas seeking privileged communications with advocates and providers. They argued privilege, FERPA, and HIPAA.

21. On May 19, 2025, TCAPS filed a Response and Motion to Strike parents' Motion to Quash.

22. On April 28, 2025, the ALJ convened a prehearing conference. Parents reiterated evaluation requests; ALJ acknowledged issues; TCAPS's attorney, Rob Dietzel, admitted the District was inclined to deny until the ALJ prodded; parents pressed for judicial imprimatur and jurisdiction. The ALJ declined.

23. Parents requested that the ALJ retain jurisdiction. He refused, ensuring parents had no enforceable relief.

24. On May 21, 2025, the ALJ issued a Decision and Order. He granted TCAPS's Motion for Summary Judgment, dismissed the case without prejudice, and denied parents' pending motions.

25. The ALJ explicitly stated findings were "unnecessary." This directly violated 20 U.S.C. § 1415(h)(4).

26. The ALJ ignored parents' Amended Complaint and failed to address allegations of denial of FAPE. He did not rule on parents' claims of failure to evaluate, despite overwhelming evidence in the record.

27. The ALJ also ignored the MET report disclaimers, the invalidity of evaluations, and the lack of trained evaluators.

28. By refusing to issue findings, the ALJ deprived parents of prevailing party status, as only judicial imprimatur can confer that status. *V. v. Cherry Hill*.

29. The ALJ failed to retain jurisdiction over IEEs, leaving parents without enforcement mechanisms.

30. The ALJ's dismissal ignored parents' argument that claims were capable of repetition yet evading review.

31. The ALJ's reliance on TCAPS's voluntary concessions, later narrowed by cost caps, was improper. Voluntary cessation does not moot live disputes.

32. Parents were forced to appeal to federal court to vindicate their rights and secure the relief the ALJ failed to order.

33. Parents' May 9, 2025 Position Statement explained that TCAPS had not provided the evaluations required under IDEA and that the dispute was not moot. This filing highlighted that only an enforceable order would protect A.W.'s rights. The ALJ ignored it.

34. TCAPS's May 9, 2025 Motion for Summary Judgment argued that the case was moot because of voluntary concessions. The ALJ later adopted this argument wholesale without independent findings.

5

35. On May 13, 2025, parents filed a Motion and Brief for Order with Findings. They emphasized that under IDEA, the ALJ was statutorily required to issue findings of fact and conclusions of law. The motion cited controlling statutes and guidance. The ALJ disregarded this request.

36. On May 19, 2025, parents filed two Motions to Quash subpoenas. One addressed TCAPS's attempt to subpoena private mental health records from Michigan Hands & Voices. The other objected to the subpoena of advocate Janel Frost, citing attorney-client privilege and the work-product doctrine. Both motions demonstrated violations of due process. The ALJ denied or ignored them.

37. On May 19, 2025, TCAPS filed a Response and Motion to Strike parents' motions, improperly seeking to silence objections. The ALJ's dismissal effectively granted TCAPS relief without analysis.

38. On May 21, 2025, the ALJ issued his final Decision and Order dismissing the case. The order stated that it was unnecessary to issue findings of fact and granted TCAPS's motion. It ignored parents' amended complaint, their request for findings, and their claims of denial of FAPE.

39. The order also failed to address the live issue of whether TCAPS's refusal to evaluate A.W. constituted a violation of IDEA and a denial of FAPE. Parents' complaint squarely raised this issue. The ALJ's silence constituted reversible error.

40. The ALJ's dismissal relied entirely on TCAPS's voluntary concessions. These included letters promising IEEs but later capping reimbursement at $10,000. Such voluntary action, especially when narrowed, cannot moot IDEA claims. Parents were denied prevailing party status.

41. Had the ALJ ordered the IEEs, parents would have been prevailing parties under *V. v. Cherry Hill*. Instead, the ALJ left them without judicial imprimatur or enforceable relief.

42. The ALJ's failure to retain jurisdiction compounded the harm, as TCAPS could (and did) impose restrictions on IEEs after the hearing.

43. The ALJ also failed to find a denial of FAPE, despite overwhelming evidence: invalid MET assessments, untrained evaluators, lack of interpreter support during testing, and IEPs without measurable goals. This failure contradicted the pleadings and the record.

44. Parents now appeal to this Court. They seek reversal, de novo adjudication, and an order compelling TCAPS to fund independent evaluations in all requested areas without monetary cap. They also seek prevailing party status and attorneys' fees under IDEA.

45. Parents further request that this Court remand the matter to a different ALJ for oversight of the remaining IDEA proceedings, as the prior ALJ demonstrated repeated error and refusal to apply statutory requirements.

7

46. The ALJ's May 21, 2025 dismissal order was only a few pages long, devoid of factual findings, statutory citations, or legal analysis. This brevity reflected an abdication of his statutory duty.

47. By contrast, parents' filings spanned hundreds of pages and included detailed factual assertions, exhibits, and motions. The ALJ failed to acknowledge or analyze any of this record evidence.

48. Parents' amended complaint, accepted into the record on April 28, 2025, specifically raised interpreter-access claims, failure to evaluate, and systemic IDEA violations. The ALJ's dismissal did not reference these claims, leaving them unaddressed.

49. The ALJ also disregarded parents' repeated objections that TCAPS's proposed IEEs were restricted by unlawful monetary caps. These restrictions were added after initial unlimited offers, demonstrating bad faith. The ALJ ignored this shift.

50. Parents stressed throughout the proceedings that only an enforceable order could secure their rights and confer prevailing party status. The ALJ's dismissal deprived them of this relief.

51. The ALJ further erred by adopting TCAPS's May 9, 2025 Motion for Summary Judgment wholesale, without independent analysis. This failure to exercise judgment contravened IDEA's due process requirements.

52. The ALJ's order denied or ignored parents' pending motions, including their motions to quash subpoenas, their motion for findings, and their objections to the IEP process. These denials deprived parents of due process.

53. By dismissing without findings, the ALJ ensured that this Court has no findings entitled to deference. Judicial review must therefore proceed de novo.

54. The complete administrative record demonstrates clear procedural and substantive violations: refusal to evaluate, reliance on invalid assessments, inadequate IEPs, denial of FAPE, and denial of due process.

55. Parents have exhausted their administrative remedies. The ALJ's errors left them no choice but to appeal to this Court.

56. Parents seek reversal of the ALJ's dismissal, an order compelling TCAPS to fund comprehensive IEEs without cap, a finding that they are prevailing parties entitled to attorneys' fees, and a remand to a different ALJ to ensure impartial oversight of further proceedings.

57. Without this Court's intervention, A.W. will continue to be denied appropriate evaluations and services, compounding the denial of FAPE.

58. Parents' January 2025 progress reports, March 2025 REED, and subsequent communications demonstrated consistent concern with A.W.'s lack of progress. These were central issues that the ALJ failed to analyze.

59. The MET report in April 2025 expressly admitted that testing results were invalid or to be "interpreted with caution." Despite this, the ALJ treated the evaluations as sufficient, ignoring the evaluators' own disclaimers.

60. Parents demonstrated that without proper evaluations, the April 29, 2025 IEP was inherently deficient. It lacked measurable goals, failed to address communication needs, and omitted enforceable interpreter services. The ALJ did not analyze these deficiencies.

61. Parents' motions documented how TCAPS's proposed IEE cost caps made it impossible to secure qualified evaluators in Deaf education. The ALJ failed to consider the real-world impact of these caps.

62. Parents highlighted that TCAPS initially agreed to provide IEEs without restrictions but later added limitations. This sequence evidenced bad faith. The ALJ disregarded it.

63. Parents repeatedly requested that the ALJ retain jurisdiction to enforce any concessions. The ALJ refused, ensuring no enforceable relief would exist.

64. Parents' May 19, 2025 Motions to Quash raised substantial due process concerns, showing TCAPS overreached in seeking privileged and protected information. The ALJ's dismissal bypassed these live disputes.

65. Parents' Amended Complaint introduced interpreter-access claims, critical to A.W.'s right to effective communication. The ALJ never addressed these claims in his dismissal order.

66. The ALJ's failure to recognize that parents had properly preserved these issues undercut the integrity of the proceeding.

67. The ALJ's repeated refusal to issue findings, compounded by his failure to recognize systemic violations, denied parents procedural and substantive rights.

68. As a result, parents were denied the prevailing party status to which they were entitled. The ALJ's dismissal ensured they could not obtain attorneys' fees, contrary to IDEA's enforcement scheme.

69. These errors, individually and collectively, demonstrate that the ALJ abdicated his duty. This Court must therefore intervene to correct the errors and provide enforceable relief.

70. Parents' filings consistently documented that the District resisted evaluations until pressed by litigation, and even then narrowed its concessions with unlawful caps. The ALJ disregarded this record of bad faith.

71. Parents cited statutory provisions requiring evaluations in all areas of suspected disability, including cognition, executive functioning, socio-emotional functioning, and language. The ALJ failed to apply these provisions.

72. Parents demonstrated that the District's evaluations lacked validity, were conducted without interpreters, and failed to account for A.W.'s communication mode. These facts were undisputed but ignored.

73. Parents also highlighted that the District failed to provide evaluators trained in Deaf education, contrary to IDEA requirements that assessments be administered by qualified personnel. The ALJ omitted findings on this point.

74. The District's IEP goals were generic and immeasurable, lacking benchmarks in communication or executive functioning. Parents objected and documented these deficiencies. The ALJ's decision made no mention of them.

75. Parents argued that the District's concessions, induced by ALJ prompting, were not voluntary and could not moot the case. The ALJ disregarded this admission and treated the concessions as dispositive.

76. Parents pointed out that TCAPS initially promised IEEs without restrictions, then imposed limitations. The ALJ ignored this evidence, despite its clear impact on enforceability.

77. Parents objected that the ALJ's refusal to retain jurisdiction deprived them of the ability to enforce even limited concessions. This error was raised in multiple filings but went unaddressed.

78. The ALJ's summary dismissal effectively adopted TCAPS's positions while ignoring parents' objections. This imbalance deprived parents of a fair hearing.

12

79. Parents' requests for compensatory education to remedy lost opportunities were not addressed by the ALJ. His dismissal order eliminated any path to relief.

80. The ALJ's approach ensured that parents, despite proving violations, were denied prevailing party status and the fee recovery necessary to enforce IDEA rights.

81. Public policy concerns raised by parents—highlighting how dismissals without findings deter enforcement—were not acknowledged by the ALJ.

82. The record demonstrates systemic errors: refusal to evaluate, invalid testing, inadequate IEPs, unlawful IEE restrictions, and denial of procedural rights. The ALJ failed to make findings on any of these.

83. Parents exhausted every administrative remedy, raising each issue in motions, briefs, and hearings. The ALJ ignored these issues and dismissed without rulings.

84. Because the ALJ failed to issue findings, this Court must review the record de novo. The absence of findings eliminates any deference.

85. The relief parents seek is clear: enforceable orders compelling evaluations without cap, prevailing party status, and remand to a different ALJ to ensure impartial oversight.

86. Parents' filings repeatedly showed that A.W. was not making progress in communication or academics because his needs were not properly assessed. The ALJ ignored this evidence and failed to consider whether a denial of FAPE had occurred.

87. The MET report's disclaimers—that results were invalid without interpreter support—were material. The ALJ's dismissal omitted any discussion of these disclaimers, effectively treating invalid results as valid.

88. Parents demonstrated that without proper evaluations, the April 29, 2025 IEP was inherently deficient. It lacked measurable goals, failed to address communication needs, and omitted enforceable interpreter services. The ALJ did not analyze these deficiencies.

89. Parents' motions documented how TCAPS's proposed IEE cost caps made it impossible to secure qualified evaluators in Deaf education. The ALJ failed to consider the real-world impact of these caps.

90. Parents highlighted that TCAPS initially agreed to provide IEEs without restrictions but later added limitations. This sequence evidenced bad faith. The ALJ disregarded it.

91. Parents repeatedly requested that the ALJ retain jurisdiction to enforce any concessions. The ALJ refused, ensuring no enforceable relief would exist.

92. Parents' May 19, 2025 Motions to Quash raised substantial due process concerns, showing TCAPS overreached in seeking privileged and protected information. The ALJ's dismissal bypassed these live disputes.

93. Parents' Amended Complaint introduced interpreter-access claims, critical to A.W.'s right to effective communication. The ALJ never addressed these claims in his dismissal order.

94. The ALJ's reliance on TCAPS's voluntary concessions contradicted binding law. Voluntary cessation does not moot claims, particularly when parents sought judicial imprimatur and systemic relief.

95. Parents' filings emphasized that the issues were capable of repetition yet evading review, a doctrine well-recognized in IDEA contexts. The ALJ ignored this argument.

96. By refusing to issue findings, the ALJ deprived this Court of a proper administrative record. Judicial review must therefore proceed de novo.

**CLAIMS FOR RELIEF**

**Count I – Failure to Issue Findings of Fact and Conclusions of Law**

1. IDEA requires that due process hearing decisions contain findings of fact and decisions. 20 U.S.C. § 1415(h)(4).

2. Parents filed a May 13, 2025 Motion specifically requesting findings. The ALJ instead stated findings were "unnecessary."

3. This omission violated statutory mandate, deprived parents of due process, and prevented meaningful judicial review.

**Count II – Improper Mootness Dismissal**

4. The ALJ dismissed the case as moot based on voluntary concessions by TCAPS.

5. Parents' May 9, 2025 Position Statement showed the dispute remained live: failure to evaluate, denial of FAPE, systemic issues.

6. Voluntary cessation cannot moot claims, especially those capable of repetition yet evading review. The ALJ's dismissal was legal error.

**Count III – Failure to Evaluate in All Areas of Suspected Disability**

7. At the March 10, 2025 REED, parents requested evaluations in expressive/receptive language, cognition, executive functioning, socio-emotional functioning, and behavior.

8. IDEA requires districts to evaluate in all suspected areas of disability. 20 U.S.C. § 1414(b)(3)(B). TCAPS refused by marking "no additional data needed."

9. The April 22, 2025 MET report itself warned that results were invalid or "to be interpreted with caution" due to lack of interpreter support.

10. The ALJ ignored this evidence and failed to find that the District violated IDEA.

**Count IV – Failure to Find a FAPE Violation Contrary to the Complaint**

11. Parents' due process complaint expressly alleged denial of FAPE.

12. Evidence in the record demonstrated denial: invalid assessments, use of untrained evaluators, failure to provide interpreter support, and IEPs with vague goals and no enforceable interpreter services.

13. The ALJ's dismissal failed to find a FAPE violation, contradicting the pleadings and the record.

**Count V – Failure to Order IEEs and Provide Judicial Imprimatur**

14. The ALJ acknowledged the need for IEEs but failed to order them.

15. Instead, he relied on TCAPS's voluntary letters, which later capped reimbursement at $10,000.

16. Without an order, parents were denied the judicial imprimatur required to establish prevailing party status. See *V. v. Cherry Hill Bd. of Educ.*

17. Had the ALJ ordered IEEs, parents would have been prevailing parties entitled to attorneys' fees. His failure to do so unlawfully deprived them of statutory remedies.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Reverse the ALJ's May 21, 2025 dismissal order;

B. Find that TCAPS violated IDEA by failing to evaluate A.W., denying him a free appropriate public education (FAPE), and failing to issue findings of fact and conclusions of law;

C. Order TCAPS to fully fund Independent Educational Evaluations (IEEs) in expressive/receptive language, cognition, executive functioning, socio-emotional

functioning, and behavior, with no monetary cap or restrictions, to be conducted by qualified evaluators trained in Deaf education and fluent in A.W.'s communication modes;

D. Declare that Plaintiffs are the prevailing parties and award reasonable attorneys' fees and costs under 20 U.S.C. § 1415(i)(3);

E. Remand the matter to a different ALJ for continued oversight of IDEA compliance to ensure impartiality, accountability, and adherence to statutory mandates;

F. Grant compensatory education and such additional equitable relief as necessary to remediate the harm caused by TCAPS's failure to evaluate and the ALJ's unlawful dismissal; and

G. Grant such other and further relief as this Court deems just and proper.

Date:  August 19, 2025

                                                          Respectively Submitted,

                                                          /s/ Jason D. Wine
                                                          Jason D. Wine (P57906)